**DAVIS, Federal Agent and Director General of Railroads, v. MILLER-LINK LUMBER CO. et al.**

(Circuit Court of Appeals, Fifth Circuit. January 5, 1924.)

No. 4175.

1. **Corporations ⬤⟿566(1)—Debt due United States entitled to priority, when receiver appointed for corporation afterwards found to be insolvent.**

Where a receiver was appointed for a corporation in a creditors' bill, alleging solvency, but temporary embarrassment, and the corporation joined in the application for the appointment of the receiver and was subsequently found to be insolvent, debts due the United States were entitled to priority, under Rev. St. § 3466 (Comp. St. § 6372), as the transaction was in effect a general assignment for the benefit of creditors.

2. **United States ⬤⟿76—Scope of priority statute relating to debts due United States.**

In order to give the priority specified in Rev. St. § 3466 (Comp. St. § 6372), relating to debts due the United States, there must be an insolvent debtor who makes a voluntary assignment of his property, or a case in which the estate of an absconding, concealed, or absent debtor is attached by process of law, or a case in which an act of bankruptcy is committed.

3. **Bankruptcy ⬤⟿60—Scope of "general assignment for benefit of creditors."**

A general assignment by a debtor for the benefit of his creditors, within Bankruptcy Act, § 3a, subd. 4 (Comp. St. § 9587), as amended, embraces any act by a debtor having the effect of a conveyance of all his property and an appropriation of it to raise funds to pay his debts, share and share alike, and a debtor's participation in bringing about the appointment of a receiver of all his property may be under such circumstances as to have that effect.

[Ed. Note.—For other definitions, see Words and Phrases, First and Second Series, General Assignment.]

Appeal from the District Court of the United States for the Eastern District of Texas; W. Lee Estes, Judge.

Petition in intervention by James C. Davis, as Federal Agent and Director General of Railroads, against the Miller-Link Lumber Company and others. From a disallowance of petitioner's asserted claim of priority petitioner appeals. Reversed and remanded.

Robert H. Kelley, of Houston, Tex., for appellant.

C. L. Carter, of Houston, Tex. (Conrad J. Landram, of Houston, Tex., on the brief), for appellees.

Before WALKER and BRYAN, Circuit Judges, and GRUBB, District Judge.

WALKER, Circuit Judge. On October 22, 1920, a creditor of the appellee, Miller-Link Lumber Company (herein called the debtor), filed in the court below a creditors' bill, alleging the debtor's solvency, but showing that its affairs were in such a condition that insolvency would inevitably result unless protection be extended by the court. The bill contained prayers that a receiver or receivers of all the property and assets of the debtor be appointed, that such property and assets be marshaled and administered under the orders of the court, that the court "enforce and decree the rights, liens, and equities of the creditors

of the defendant as same may be finally ascertained and decreed by this court in and to each and every portion of the property and assets of the defendant, and make distribution thereof as equity may require," and for "such other and further relief as the nature and circumstances of the cause may require." On the same day the debtor filed an answer, which admitted the allegations of the bill and contained the following:

"For further answer in its behalf, this defendant says that it admits the necessity for the appointment of a receiver as prayed for by the plaintiffs, and that it joins in the prayer of plaintiffs herein for the appointment of a receiver for the properties of this defendant, to the end that same may be administered as a whole and for the benefit and interest of all parties concerned."

Following the submission of the cause on the bill and the answer thereto, the court, on October 26, 1920, appointed receivers in pursuance of the prayers of the bill and the answer thereto. On August 22, 1922, the appellant by leave of the court filed a petition in intervention in the cause. That petition contained allegations to the following effect: That receivers were appointed as above alleged, and at the time of the filing of the petition were duly qualified and acting receivers of said debtor; that petitioner's predecessor in office "was from September 12, 1919, to February 29, 1920, both inclusive, in possession and control of the Orange & Northwestern Railroad, a railroad property owned by the Orange & Northwestern Railroad Company, a corporation, using, maintaining, and operating the same"; that by contracts in writing entered into prior to, and in full force and effect during, the last-mentioned period the debtor had been granted the license and privilege of operating its logging trains over certain portions of said Orange & Northwestern Railroad, the contracts providing for the payment by the debtor of a trackage charge of $1 per train mile; that a specified part of the sums due by the debtor for trackage during the last-mentioned period became due and owing to petitioner's predecessor in his official capacity, and such balance remains due and payable under the terms of said contracts; that such indebtedness is in fact owed to the United States of America; that the debtor "is insolvent, its properties and assets having been placed in the hands of the defendant receivers by this court in this cause, the said receivership being in truth and in fact a voluntary assignment of the properties and assets of said lumber company to the defendant receivers, acting under orders of this court"; and "that by virtue of the premises, and by virtue of the terms and provisions of section 3466 of the Revised Statutes of the United States [Comp. St. § 6372], the said indebtedness ought to and of right should be paid prior and in preference to all other indebtedness of the defendant lumber company." The petition prayed that the alleged debt be allowed as a preferred claim against the properties in the hands of the receivers, and that the receivers be ordered and directed to pay such debt in preference to all other indebtedness of the debtor.

By their answer to the petition the receivers admitted its allegation that the debtor is insolvent, but contested the asserted claims that the debt alleged is in fact owed to the United States, and that it is entitled to preference or priority of payment. The master to whom the

matter was referred made findings of fact, which were agreed to by the parties. Included in those findings was one .to the effect that the debtor is, and at the time the bill was filed was, insolvent. He recommended that judgment be rendered in favor of the appellant for an amount stated, and that appellant rank as a common creditor, without rights of priority in payment. The court overruled exceptions to the master's report and entered a judgment or decree in pursuance of the master's recommendation. The appellant complains of the disallowance of the asserted claim to priority.

[1] That claim is based upon section 3466 of the Revised Statutes of the United States, which provides:

"Whenever any person indebted to the United States is insolvent, or whenever the estate of any deceased debtor, in the hands of the executors or administrators, is insufficient to pay all the debts due from the deceased, the debts due to the United States shall be first satisfied; and the priority hereby established shall extend as well to cases in which a debtor, not having sufficient property to pay all his debts, makes a voluntary assignment thereof, or in which the estate and effects of an absconding, concealed, or absent debtor are attached by process of law, as to cases in which an act of bankruptcy is committed."

[2] "In order to give the priority specified in § 3466, there must be a case of an insolvent debtor who makes a voluntary assignment of his property, or a case in which the estate and effects of an absconding, concealed or absent debtor are attached by process of law, or a case in which an act of bankruptcy is committed." United States v. Oklahoma, 261 U. S. 253, 262, 43 Sup. Ct. 295, 298 (67 L. Ed. 638). There is no basis for a claim that this is a case in which the estate and effects of an absconding, concealed, or absent debtor are attached by process of law. In behalf of the appellees it is contended that the facts of the case do not make it one of an insolvent debtor who makes a voluntary assignment of his property, or one in which an act of bankruptcy is committed. Expressions contained in the opinion in the case of Beaston v. Farmers' Bank, 12 Pet. 102, 133, 136, 9 L. Ed. 1017, are relied on to support this contention. In the course of the opinion in that case it was said in effect that the insolvency of a debtor does not give rise to the priority provided for by the above-quoted statute until the debtor has been divested of his property in one of the modes therein stated, and, with reference to an appointment, in a suit brought by the United States, of receivers of the debtor's property, it was said:

"It is sufficient to say, in this case, that it does not appear that the power conferred on the receivers was ever executed, and, if it had been, it would not have been a transfer and possession of the property of the Elkton Bank, within the meaning of the act of Congress, and therefore the priority could not have attached to the funds in their hands."

The expressions referred to cannot properly be given the effect of a decision that receivers could not be trustees for the United States and bound to pay their debt first, as the court found that the order appointing receivers was never executed, with the result that the court, in speaking of the effect that order would have had if it had been executed, was speaking of something which it found did not occur. Furthermore, the report of that case does not indicate that the appointment of receivers spoken of by the court was made under circumstances

similar to those attending the appointment of receivers now in question. In the instant case it is disclosed that the debtor, when it was insolvent, joined in an application for the appointment of a receiver of all its property and assets under a creditors' bill, which prayed for a marshaling of those assets and the enforcement of the claims and rights of creditors under the orders of the court.

[3] An insolvent debtor, by procuring or assenting to the appointment of a receiver of all his property under such an order as the one made in the instant case, does an act which under the circumstances is reasonably to be expected to have substantially the same result as the making by him of a general assignment for the benefit of his creditors, namely, the divesting of his title to such property, the application of it or the proceeds of the sale of it to the payment of his debts, and the settlement and winding up of his estate. A general assignment by a debtor for the benefit of his creditors, within the meaning of subdivision 4 of amended section 3a of the Bankruptcy Act (Comp. St. § 9587), embraces any act by the debtor having the effect of a conveyance of all his property and an appropriation of it to raise funds to pay his debts, share and share alike, and a debtor's participation in bringing about the appointment of a receiver of all his property may be under such circumstances as to have that effect. Moody-Hormann-Boelhauwe v. Clinton Wire Cloth Co., 246 Fed. 653, 158 C. C. A. 159.

For reasons above indicated, we conclude that the appointment of receivers now in question was made under such circumstances as to have the effect of a general assignment by the debtor for the benefit of its creditors, with the result of making the receivers holders of the debtor's property as trustees for its creditors, and bound to pay the debt due to the United States first out of the proceeds of such property. A similar conclusion on a quite similar state of facts was reached in the case of Davis v. Pullen (C. C. A.) 277 Fed. 650.

The court erred in ruling against the asserted claim to priority. Because of that error, the decree is reversed, and the cause is remanded for further proceedings not inconsistent with this opinion.

Reversed.