*318 OPINION.
Milliken:
The deficiency involved in this proceeding arises from the fact that respondent, having determined that the trustees in dissolution were taxable as a trust, has reversed his position and now determines that the organization represented by them was an association and therefore taxable as a corporation.
The trust under which petitioners were acting was not created by any trust agreement. It was not founded on contract. It was the creature of statute and all the rights, powers and duties of the trustees were derived from the Texas statute. Article 1205 of the Revised Statutes of Texas (1911) provides that where four-fifths in interest of outstanding stock files with the Secretary of State of Texas a consent similar to that set forth in the findings of fact “ the corporation is dissolved and such officer shall so note on the ledger of his office.” Article 1206 of the Revised Statutes of Texas (1911) provides :
Unless a Receiver appointed, President etc. to be trustees and close business. Upon the dissolution of any corporation, unless a receiver is appointed by some court of competent jurisdiction, the President and directors or managers of tlie affairs of the corporation at the time of its dissolution, by whatever name they may be known in law, shall be trustees of the creditors and stockholders of such corporation, with full power to settle the affairs, collect the outstanding debts, and divide the moneys and other property among the stockholders after paying the debts due and owing by such corporation at the time of its dissolution, as far as such money and property will enable them after paying all just and reasonable expenses; and to this end and for this purpose they may, in the name of such corporation, sell, convey and transfer all real and personal property belonging to such company, collect all debts, compromise controversies, maintain or defend judicial proceedings, and to exercise the full power and authority of said company over such assets and properties, and the existence of every corporation may be continued for three years after its dissolution from whatever cause for the purpose of enabling those charged with the duty to settle up its affairs, and in case a receiver is appointed by a court for this purpose, the existence of such corporation may be continued by the courts so long as in its discretion it is necessary to suitably settle up the affairs of such corporation; provided that the dissolution of a corporation shall not operate to abate, nor be construed as abating any pending suit in which such corporation is a defendant, but such suit shall continue against such corporation and judgment shall be rendered as though the same was not dissolved, and in case no receiver has been appointed for said corporation, suit may be instituted on any claim against said corporation, as though the same had not been *319 dissolved, and service of process may be obtained on tbe president, directors, general manager, trustee, assignee, or other person in charge of the affairs of the corporation at the time it was dissolved by whatever name they may be known in law, and judgment may be rendered as though the corporation had not been dissolved, and the assets of said corporation shall be liable for the payment of such judgment just as if said corporation had not been dissolved.
The effect of this article is discussed in Moody-Hormann-Boelhauwe v. Clinton Wire Cloth Company (C. C. A.), 246 Fed. 653. It was there held that the dissolution of a Texas corporation under articles 1205 and 1206 was an act of bankruptcy. After quoting article 1206 the court said:
A general assignment, within the meaning of the cited provision of the Bankruptcy Act, embraces any act by the alleged bankrupt having the effect of a conveyance of all its property and an appropriation of it to raise funds to pay Us debts, share and share alike. The name and form which the transaction assumes are not material. In re Thomlinson Co., 154 Fed. 834, 83 C. C. A. 550; In re Utley (D. C.) 235 Fed. 905; 5 Corpus Juris, 1118. The Texas statute (article 1206, supra) gives to the action alleged the effect of divesting the corporation of the title to all its property and vesting it in designated persons as— “trustees of the creditors and stockholders of such corporation, with full power to settle the affairs, collect the outstanding debts, and divide the moneys and other property among the stockholders, after paying the debts due and owing by such corporation at the time of its dissolution, as far as such money and property will enable them after paying all just and reasonable expenses; and to this end and for this purpose they may, in the name of such corporation, sell, convey and transfer all real and personal property belonging to such company, collect all debts, compromise controversies, maintain or defend judicial proceedings, and to exercise the full power and authority of said company over such assets and properties.”
We do not think that there is any merit in the suggestion that the transaction alleged was one by the corporation’s stockholders, and was not one by the corporation, because not effected by the officers or agents of the corporation having authority to bind it. An effect of the statute is to make the corporation’s stockholders the agency by which a conveyance or transfer of its property and an appropriation of it to raise funds to pay its debts, share and share alike, are accomplished. The transfer was as effectually that of the corporation as it would have been if made in the name of the corporation, by its officers or agents ordinarily vested with authority to take such action in its behalf. The conclusion is that the transaction alleged had the essential features of a general assignment for the benefit of creditors, within the meaning of the above-cited provision of the bankruptcy Act. This being so, the Bankruptcy Act gave the corporation’s creditors the right to have it adjudged bankrupt and to have its assets administered by the bankruptcy court, instead of by the trustees in effect nominated by it stockholders. (Italics supplied.)
While we may have here all the essentials of a trust, it does not necessarily follow that such an organization is not taxable as a corporation. If a trust is organized by voluntary agreement, for the purpose of transacting business under corporate forms and methods, and does transact business in such manner, it is an association within the meaning of the Revenue Acts. E. A. Landreth Co., 11 B. T. A. 1, *320 wherein Crocker v. Malley, 249 U. S. 223, and Hecht v. Malley, 265 U. S. 144, are discussed. The record does not disclose anything which indicates that the trustees conducted their affairs after the manner of a corporation, much less that they in connection with the beneficiaries conducted the trust affairs in such manner. Neither was the trust created to transact business. It was created to wind up a business. The term “ business ” as used in the various revenue acts, has a well defined meaning. Thus it is said in Von Baumbach v. Sargent Land Co., 242 U. S. 503:
As to the second question : Were the respondents carrying on business, within the meaning of the Corporation Tax Act? This question was dealt with by this court in the first of the Corporation Tax Cases, Flint v. Stone Tracy Co. 220 U. S. 107, 55 L. Ed. 389, 31 Sup. Ct. Rep. 342, Ann. Cas. 1912B, 1312. As the tax was there held to be assessed upon the privilege of doing business in a corporate capacity, it became necessary to inquire what it was to do business, and this court adopted with approval the definition, judicially approved in other cases, which included within the comprehensive term “ business,” “ that which occupies the time, attention, and labor of men for the purpose of a livelihood, or profit." (Italics supplied.)
After referring to various cases, the court continued:
It is evident, from what this court has said in dealing with the former eases, that the decision in each instance must depend upon the particular facts before the court. The fair test to be derived from a consideration of all of them is between a corporation which has reduced its activities to the owning and holding of property and the distribution of its avails, and doing only the acts necessary to continue that status, and one which is still active and is maintaining its organization for the purpose of continued efforts in the pursuit of profit and gain, and such activities as are essential to those purposes. (Italics supplied.)
In the instant case, we do not have before us a corporation which has reduced its activities. We have before us three trustees for the creditors and stockholders of a dissolved corporation, whose sole duty was to wind up the defunct concern. The trust was not created “ for the purpose of continued efforts in the pursuit of profit and gain ” but for the purpose of distributing the assets of a corporation which had been organized for such purpose but which was then dissolved. The end for which a corporation is organized is a material element in determining whether it transacts business. See Edwards v. Chile Copper Co., 270 U. S. 452, where it is said:
If the corporation was one that Congress had power to tax in this way, it is hard to say that it is not within the taxing acts. It was organized for profit and was doing what it principally was organized to do in order to realize profit. The cases must be exceptional, when such activities of such corporations do not amount to doing business in the sense of the statutes. The exemption “ when not engaged in business ” ordinarily would seem pretty nearly equivalent to when not pursuing the ends for which the corporation was organized, in the cases where the end is profit. In our opinion the plaintiff was liable to the tax.
*321 To hold that the trustees for the creditors and stockholders of the Gonzolus Creek Oil Co. conducted a business as above defined would be to impute to them a violation of the trust imposed upon them and would perhaps lay them open to proceedings by the state in the nature of quo warranto. Cook on Corporations, 8th Ed., sec. 641. In the absence of convincing evidence, we should be slow to impute to these trustees a violation of their trust and the evidence in the record does not, in our opinion, disclose any such violation. Respondent points out that Well No. 2 was completed and paid for after the dissolution of the corporation; that petitioners expended large amounts for labor, tools, tanks, etc.; that they checked the flow of the oil; that they sold a part of the oil lease and that in the division ordels they retained a power of change or revocation. The payment for the completion of Well No. 2 was made in satisfaction of an obligation of the dissolved corporation. The expenditures for tools, tanks, etc., were made to conserve the assets of the trust and were á proper trust expenditure. The sale of the small part of the lease was made in the exercise of a purely statutory power, to-wit, to dispose of the assets and distribute the proceeds. The power of revocation or change was properly inserted to the end that the trustees might have sufficient funds to pay the obligations of the corporation and in fact this power was exercised for that very purpose and none other. The trustees attempted to sell the whole lease but failed because they could find no purchaser who would pay what it was then deemed to be worth. If the sale had been consummated, the trustees would have been compelled to exercise the power and revoke all payments to the stockholders. On the other hand, the trustees at once exercised their statutory power to distribute the assets of the corporation to the extent of their then existing ability. They made provision for the distribution to the stockholders of the proceeds of the oil and they tried to but failed to sell the lease. They entered into no new operations. The only acts done by them were either in the nature of conservation of the assets of the trust or a distribution thereof. We are of opinion that neither the trustees in dissolution nor such trustees in connection with the stockholders of the dissolved corporation were an association as that term is used in the Revenue Acts of 1918 and 1921.
Respondent invites our attention to section 239 of the Revenue Act of 1918. This section in part provides:
* * * In eases where receivers, trustees in bankruptcy, or assignees are operating the property or business of corporations, such receivers, trustees, or assignees shall make returns for such corporations in the same manner and form as corporations are required to make returns. Any tax due on the basis of such returns made by receivers, trustees, or assignees shall be *322 collected in the same manner as if collected from the corporations of whose business or property they have custody and control. * * *
Section 239 of the Revenue Act of 1921 is to the same effect. The effect of this section is that receivers, trustees in bankruptcy or assignees who are operating the property or business of corporations “shall make returns for such corporations.” It is the income of the corporations and not the income of receivers and trustees or assignees which is to be taxed. Thus, when such a fiduciary sells property purchased by the corporation which he represents, the basis for computing gain or loss is the cost of the property to the corporation and not its value when acquired by the fiduciary. Whether section 239 is applicable to a dissolved corporation which has transferred the title to its assets to trustees in liquidation, is not before us. Here respondent determined the tax due by the corporation, and it has been paid. He now seeks to determine a tax, not against the corporation, but against petitioners as a taxable entity entirely distinct and separate from the corporation. He makes the date of dissolution the dividing point and computes the income and invested capital of the corporation and of petitioners and treats them as though they had no relation to each other.
The sole question before us is whether petitioners, together with the stockholders of the Gonzolus Creek Oil Co. constituted an association. This question is answered in the negative. The conclusion reached disposes of all other issues raised.

Judgment of no deficiency will be entered.