**MOORE v. YAMPA MERCANTILE CO. et al. (two cases).**

(Circuit Court of Appeals, Eighth Circuit. March 3, 1923.)

Nos. 5928, 5929.

1. **Bankruptcy ⊜⇒449—Finding that alleged bankrupt was not farmer reviewable by appeal, and not writ of error.**

Although, on hearing of involuntary bankruptcy petition, the alleged bankrupt demanded and obtained a jury trial of the issues in the case, the adjudication of bankruptcy therein was not reviewable solely by writ of error, for the issue whether he was engaged chiefly in farming or in lumbering was not one of the issues regarding which he had a right, under Bankruptcy Act, § 19a (Comp. St. § 9603), to a trial by jury; hence the verdict upon that issue was merely advisory, and the adjudication necessarily involved a finding and decree of the court below as a court of equity that he was not engaged chiefly in farming when he committed an act of bankruptcy, and such finding and decree was reviewable by appeal, and not by writ of error.

2. **Bankruptcy ⊜⇒449—Issues triable by jury, and reviewable by writ of error, stated.**

The only issues on which a defendant in a petition for his adjudication in bankruptcy has the right to a jury trial under Bankruptcy Act, §

19a (Comp. St. § 9603), are the questions of his insolvency and the commission of the act or acts of bankruptcy alleged, the trial of which issues by the jury on his demand must be according to the ordinary course of common law, and their trial is reviewable only by writ of error.

**3. Bankruptcy ☜467—On conflicting evidence, decision that defendant was not engaged in farming affirmed.**

On conflicting evidence, *held*, that finding of court below, on hearing of involuntary bankruptcy proceedings, that alleged bankrupt was not engaged chiefly in farming, would not be disturbed.

**4. Bankruptcy ☜60—Assignment held assignment of all of bankrupt's property.**

In view of Rev. St. Colo. 1908, § 175, requiring a general assignment for benefit of creditors to convey all the assignor's property not subject to levy and sale under execution, *held*, in involuntary bankruptcy proceedings, that assignment in Colorado of alleged bankrupt constituted an act of bankruptcy, in that it was an assignment of all of his property, and not merely that part thereof used in his lumber business, notwithstanding recitals in the assignment as to the protection of creditors of the lumber business, and also that it was made for the benefit of all his creditors, and not merely for that part of the creditors whose claims arose out of his lumber business.

**5. Bankruptcy ☜60—General assignment held an act of bankruptcy.**

In view of Rev. St. Colo. 1908, §§ 175, 179, 190, as to appointment of assignee by the court where the named assignee fails to act, *held*, that a general assignment in Colorado for benefit of creditors constituted an act of bankruptcy, although the named assignee failed to qualify or act as such.

**6. Bankruptcy ☜60—"General assignment," although defective or ineffective, is act of bankruptcy.**

The "general assignment" declared by the Bankruptcy Act (Comp. St § 9587) to constitute an act of bankruptcy embraces any conveyance at common law or pursuant to statute by which the assignor intends to make and does make an absolute appropriation of his property not exempt from levy to pay all his debts, although there may be some defect in the conveyance, or some failure to comply with some law or statute in the proceeding he takes to effectuate his intention, which does not prevent the actual appropriation of his property for the benefit of his creditors.

[Ed. Note.—For other definitions, see Words and Phrases, First and Second Series, General Assignment.]

Appeal from and in Error to the District Court of the United States for the District of Colorado; Robert E. Lewis, Judge.

Petition by the Yampa Mercantile Company and others to have Herbert E. Moore adjudged bankrupt. Decree adjudicated defendant bankrupt, and the alleged bankrupt appeals and also brings error. Motion to dismiss appeal denied, and adjudication and decree affirmed.

Ernest Morris, of Denver, Colo., for appellant and plaintiff in error.

Arthur F. Friedman, of Denver, Colo. (Horace H. Hindry and Guy K. Brewster, both of Denver, Colo., on the brief), for appellees and defendants in error.

Before SANBORN and KENYON, Circuit Judges, and POLLOCK, District Judge.

SANBORN, Circuit Judge. On June 27, 1921, Herbert E. Moore was adjudged a bankrupt upon an involuntary petition which charged

that on March 9, 1921, he had made a general assignment for the benefit of his creditors. To the petition Mr. Moore answered: First, that on and before March 9, 1921, he was chiefly engaged in farming and tilling the soil, and was not subject to adjudication in bankruptcy; and, second, that he had not made a general assignment for the benefit of his creditors and was not insolvent, and he demanded that the issue regarding his insolvency be inquired of by a jury. The court called a jury, all the evidence at the trial and hearing upon all the issues was presented to them, at the close of the trial the court instructed them that Mr. Moore made a general assignment for the benefit of his creditors, as charged in the petition, and submitted to them the issue whether or not in February and March, 1921, the defendant was chiefly engaged in farming or tilling the soil. The jury found that he was not so engaged and that at that time he was chiefly engaged in the business of lumbering. Thereupon the court adjudged him a bankrupt, and from that decree he has appealed, and he has also sued out a writ of error to reverse it.

[1] The appellees have made a motion to dismiss the appeal on the ground that, because the appellant demanded and obtained a jury trial of the issues in the case, the adjudication of bankruptcy therein is reviewable only by a writ of error. But the issue whether Mr. Moore was chiefly engaged in farming or in lumbering was not one of the issues regarding which he had a right, under section 19a of the Bankruptcy Act (Comp. Stat. § 9603), to a trial by jury. Consequently their verdict upon that issue was merely advisory to the court, and the adjudication of bankruptcy unavoidably evidences the finding and decree of the court below as a court of equity that he was not engaged chiefly in farming and tilling the soil when and immediately before he committed the act of bankruptcy, and that finding and decree is reviewable by appeal, and not by writ of error.

[2] The only issues upon which a defendant in a petition for his adjudication in bankruptcy has the right to a trial by jury under section 19a, are the question of his insolvency, and the question of his commission of an act or the acts of bankruptcy alleged in the petition. The trial of these two issues by a jury on the demand of the defendant must be according to the ordinary course of common law and their trial is reviewable by an appellate court only by writ of error. Elliott v. Toeppner, 187 U. S. 327, 334, 23 Sup. Ct. 133, 47 L. Ed. 200; In re Neasmith, 147 Fed. 160, 163, 77 C. C. A. 402. But the question whether a defendant in a petition for his adjudication in bankruptcy was chiefly engaged in farming or tilling the soil is not one upon which he has the right to a jury trial, and when that question is submitted to a jury their verdict is advisory only, as in other suits in equity, and the finding and decree of the court upon that issue is not reviewable by writ of error, for errors of the court in its charge, or for its failure to charge the jury, but it is reviewable only by appeal, as in ordinary suits in equity, on the ground that the finding and decree upon this issue were unjust and inequitable. In re Neasmith, 147 Fed. 163, 77 C. C. A. 402; Stephens v. Merchants' Nat. Bank, 154 Fed. 341, 343, 83 C. C. A. 119; Carpenter et al. v. Cudd

et al., 174 Fed. 603, 606, 98 C. C. A. 449, 20 Ann. Cas. 977. The appeal in this case, therefore, properly presents for determination here the question whether or not the finding of the decree below that the defendant was not chiefly engaged in farming or tilling the soil on March 9, 1920, was unjust or inequitable, and that question must be decided by this court as upon a trial de novo, in the light of the evidence upon that issue in the court below. The motion to dismiss the appeal must therefore be denied. In re Iroquois Hotel & Apartment Co., 158 Fed. 1020, 86 C. C. A. 672.

[3] The alleged errors assigned to the rulings, findings, and decree of the court below at the hearing of the issue whether the defendant was chiefly engaged in farming or tilling the soil when and before he made the assignment have received examination to ascertain whether that trial, finding, and decree was unjust or inequitable, either on account of any of the rulings assigned as error, or because the evidence upon that issue does, not sustain the finding. The evidence and the briefs of counsel upon this question have been carefully read and thoughtfully considered. The evidence upon either side of the question, standing alone, would be sufficient to sustain a finding in its favor. When all the evidence is considered, it is conflicting. The court below saw and heard the witnesses, and thus had a far better opportunity than the members of this court rightly to determine the weight and credibility of their testimony. A recital of that testimony or of parts of it here would serve no useful purpose, because no subsequent case will present the same evidence and the same conflicts in it. Suffice it to say that a thorough search of the record has disclosed to this court no material error of law or mistake of fact in the hearing, finding, and adjudication of this question, on account of which it appears that the finding was either unjust or inequitable, and that finding and the adjudication based upon it must be permitted to stand, under the familiar rule that, when the chancellor has considered conflicting evidence and made his finding and decree thereon, they must be taken to be presumptively right, and unless an obvious error has intervened in the application of the law, or some serious mistake has been made in the consideration of the evidence, they ought not to be disturbed. De Laval Separator Co. v. Iowa Dairy Separator Co., 194 Fed. 423, 425, 114 C. C. A. 385.

[4] On March 9, 1921, the defendant, Mr. Moore, made an assignment of his property in writing to L. W. Holmberg, which was signed by both parties, was acknowledged by Moore before a notary public, and was recorded on March 12, 1921, in the records of the clerk and recorder of Routt county, Colo. At and prior to that time he had been and was the owner of farm lands and was superintending farm operations thereon, and he was also engaged in lumbering under the name of White Pine Lumber Company. The court below charged the jury that this assignment was a general assignment by the defendant for the benefit of his creditors, and that it constituted an act of bankruptcy, and the jury so found. Counsel for the defendant assigns this ruling and the adjudication of bankruptcy based upon it as error, because, as he contends, (a) this assignment was not an assignment

of all the defendant's property, but of only that part thereof that was usable and used by the defendant in his lumbering business; (b) this was not an assignment for the benefit of all the defendant's creditors, but for only that part of his creditors, that had become such through the defendant's lumbering business; and (c) the assignment was conditioned by the qualification of the assignee, Holmberg, as administrator of the estate assigned, and he never qualified under this assignment.

The assignment recites that whereas the assignor has operated a certain milling business under the name and style of White Pine Lumber Company, whereas said White Pine Lumber Company is involved, and whereas assignor herein desires that all creditors be paid in their proper order, with proper preference to labor, and to that end desires assignee herein to so administer the estate that the claims against said business be paid in their proper order:

"Now, therefore, know all men by these presents that assignor has generally sold, set over, and assigned to the assignee herein and generally granted, bargained, and sold to the assignee herein, the real and personal property of the assignor and the above and foregoing business for the benefit of all the creditors in trust for the payment of all creditors of the assignor according to the laws of the state of Colorado; and the assignor herein does make, constitute, and appoint the assignee his true and lawful attorney for him in his place and stead, and for the White Pine Lumber Company aforesaid, to receive and collect all moneys due and owing assignor and the White Pine Lumber Company on account of said milling operation: Provided, however, that the assignee herein shall first duly qualify to administer this estate as trustee, for the benefit of all creditors in manner and form provided by the state of Colorado for the payment of all indebtedness of said business in its proper order and according to the proper priority or rights under the lien laws of the state of Colorado."

Counsel invoke the proposition that the controlling rule for the interpretation of written instruments is that the intention of the parties should be deduced not from a part of but from the entire instrument, and that such intention should be given effect, and he ingeniously and forcibly argues that the intention of the assignor in this assignment was to assign only that part of his property which pertained to his lumber business, and to reserve to himself all his other property, his lands, farms, farming implements, and other personal property not used in his lumber business. In support of this contention he cites the recitals in the assignment that the assignor has operated a milling business under the name of the White Pine Lumber Company, that that company is involved, that he desires all creditors to be paid in their proper order, with proper preference to labor, and that he desires the assignee to so administer the estate that the claims against said business be paid in their proper order. But there is nothing in any of these recitals inconsistent with the conveyance of all the assignor's property to the assignee, to administer and to distribute its proceeds to all his creditors in their proper order with proper preference to labor. He cites the appointment by the assignor of the assignee, his attorney in fact, to collect all moneys owing the assignor and the White Pine Lumber Company, which was in reality the assignor, on account of certain milling operations. But there is nothing in this appointment inconsistent with the assignment of all the

property of the assignor. That appointment seems to have been inserted out of abundance of caution because the White Pine Lumber Company was not to execute the assignment under that name. Moreover, the appointment really added nothing and subtracted nothing from the power the assignee would have had, if it had been omitted.

Counsel also calls attention to that part of the proviso to the effect that the assignee shall "qualify to administer this estate as trustee for the benefit of all creditors in manner and form provided by the state of Colorado for the payment of all indebtedness of said business in its proper order and according to the proper priority or rights under the lien laws of the state of Colorado," and he contends that "this estate" in this clause means the assignor's property devoted to his lumber business only, and that the fact that this clause requires the assignee to administer the estate for the payment of all indebtedness of said business demonstrates the fact that the assignor intended to convey only his property devoted to his lumber business for the benefit of that part of his creditors only to whom he had become indebted in the conduct of that business. But this contention is in direct conflict with that part of this proviso which requires the assignee to administer the estate "for the benefit of all creditors in the manner and form provided by the state of Colorado," with the express grant in the assignment without any exception of "the real and personal property of the assignor and the above and foregoing business for the benefit of all creditors of the assignor according to the laws of the state of Colorado ratably and proportionately and according to proper priority" and with the laws of Colorado as interpreted by the Supreme Court of that state, which require a general assignment for the benefit of creditors to convey all the property of the assignor not subject to levy and sale under execution for the benefit of all his creditors. Revised Statutes of Colorado 1908, § 175; Falk v. Liebes Bros. & Co., 6 Colo. App. 473, 477, 478, 42 Pac. 46.

Counsel invokes the rules that it is proper, in the interpretation of deeds and other written instruments, to look to the recitals therein, and that they often have great influence in the construction of other parts of the instruments, and that where there is a grant of specific property or a release of specific claims, followed by general words, or a general grant or release, followed by particular or specific descriptions, the general terms are often restricted to the specific descriptions, or to things of the same class, as is well illustrated by the ancient example that, if a man should receive 10 lbs. and give a receipt for this sum, and thereby acquit and release the person of all actions, debts, duties, and demands, nothing would be released but the 10 lbs., because the last words must be limited to those foregoing. 2 Rolle, Abr. 409; Jewel Co. v. Watkins, 26 Colo. App. 494, 499, 145 Pac. 719; Palmer v. McCarthy, 2 Colo. App. 422, 423, 31 Pac. 241. Counsel has cited these authorities; the opinions in them have been read and considered in the light of the facts the opinions disclosed, but upon reflection they have not seemed applicable to the facts of this case or persuasive upon the issue now under consideration.

In a written conveyance the grant is the controlling part. If that grant is ambiguous, uncertain, of doubtful meaning or effect, the recitals in and other parts of the instrument may be considered and should have their proper influence to resolve the doubt and make certain the intent of the grantor. But where the granting terms are clear, plain, certain, without exception, and free from doubt, the recitals and the other parts of the instrument not clearly in conflict therewith may not be permitted to destroy that grant by producing uncertainty or creating exceptions. This assignment was primarily the act of the assignor, Mr. Moore. A partial assignment would have been invalid as to objecting creditors, and it is improbable that he intended to make such an assignment. In this instrument he repeatedly stated that the property he conveyed was to be administered and distributed according to the laws of Colorado, and he executed and recorded this instrument in accordance with the provisions of the statutes of Colorado pertaining to the execution and recording of general assignments for the benefit of creditors. The grant in the assignment is of the real and personal property of the assignor and the above and foregoing business for the benefit of all the creditors, in trust for the payment of all the creditors of the assignor. The grant is clear, plain, free from ambiguity and doubt, and without any exception. Where a grantor deliberately conveys his property without exception or reservation for the benefit of his creditors, it is not the province of the court to except therefrom valuable parts of his property, and a consideration of this absolute grant, the recitals and other provisions of the assignment, and the circumstances under which it was made, have left no doubt that the assignor intended to make, and by his assignment did make, a conveyance of all his property for the benefit of all his creditors.

Counsel for the defendant insist that, because the assignor recited in his assignment that he desired his assignee to so administer the estate that the claims against his business of lumbering should be paid in their proper order, the true construction of the assignment is that it was made for the benefit of that part of the assignor's creditors only whose claims arose out of the conduct of the lumber business, although the assignor was indebted to other creditors in many thousands of dollars. But the assignor declared in this assignment no less than four times that it was made for the benefit of all his creditors, and the assignment contains no exception of any of them from its benefits, nor does it expressly or by fair implication limit its benefits to those holding claims arising out of the lumber business.

[5] Finally, counsel contend that this general assignment did not constitute an act of bankruptcy, because it contained the provision "that the assignee herein shall first qualify to administer this estate as trustee for the benefit of all creditors in manner and form as provided by the state of Colorado," and the court below refused, over the exception and objection of the defendant, to permit him to prove that the assignee, Holmberg, never qualified as the assignee under the assignment or gave a bond as such. But there was no error in this ruling, because the general assignment constituted an act of bank-

ruptcy, although Holmberg, the assignee, failed to qualify or to act as such. The statutes of the state of Colorado of 1908 provide that the filing of this assignment in the office of the clerk and recorder of the county vested in the assignee named therein in trust for the assignor's creditors all his property, except that exempt by law from levy and sale under execution (section 175); that the assignee shall file an inventory and make a bond within six days after the filing of the assignment (section 179); that, if he fails so to do within ten days after the assignment is filed, the state court or judge may appoint an assignee to execute the trust, who shall have all the rights and powers and be subject to the same restrictions and obligations as an original assignee (section 190). The assignment therefore did not, by the refusal of the assignee to qualify, fail to take effect or to vest the title to the property in trust in the assignee, and to place that property and title within the jurisdiction of the state court to be administered by its subsequent appointee.

[6] Moreover, this general assignment, filed and recorded as it was in pursuance of the statutes of Colorado, falls far within the established rule that the general assignment declared by the Bankruptcy Act to constitute an act of bankruptcy embraces any conveyance at common law or pursuant to statute by which the assignor intends to make and does make an absolute appropriation of his property not exempt from levy to pay all his debts, although there may be some defect in the conveyance or some failure to comply with some law or statute in the proceeding he takes to effectuate his intention which does not prevent the actual appropriation of his property for the benefit of his creditors. In re Meyer, 98 Fed. 976, 980, 39 C. C. A. 368; In re Thomlinson, 154 Fed. 834, 835, 83 C. C. A. 550; Griffin v. Dutton, 165 Fed. 626, 627, 91 C. C. A. 614; Courtenay v. Finch, Van Slyck & McConville, 194 Fed. 368, 371, 114 C. C. A. 328.

Let the adjudication and decree below be affirmed.