## In re BRAIS.

## BRAIS v. MARTIN et al.

(Circuit Court of Appeals, Seventh Circuit. November 29, 1926.)

No. 3781.

1. **Bankruptcy ⬡⟶68—Aged woman, continuing to reside on farm after husband's death, doing what work she was able, held not subject to adjudication as involuntary bankrupt (Bankruptcy Act, § 4b [Comp. St. § 9588]).**

Aged woman, who had resided on farm with husband for 47 years, and continued thereon after husband's death, under agreement with son for division of profits, doing such housework as she was able, *held* within Bankruptcy Act, § 4b (Comp. St. § 9588), and not subject to adjudication as involuntary bankrupt.

2. **Bankruptcy ⬡⟶91(1)—Petitioning creditors must show alleged bankrupt was not excepted from being adjudged involuntary bankrupt (Bankruptcy Act, § 4b [Comp. St. § 9588]).**

Petitioning creditors have burden of showing that alleged bankrupt was not within exception of Bankruptcy Act, § 4b (Comp. St. § 9588), precluding adjudication of bankruptcy of wage-earners or farmers.

Appeal from the District Court of the United States for the Eastern District of Illinois.

Involuntary petition in bankruptcy by Edward Martin, Sr., and others against Denise Brais. From an order adjudging defendant an involuntary bankrupt, she appeals. Reversed, with directions.

R. E. Costello, of East St. Louis, Ill., for appellant.

John H. Beckers, of Kankakee, Ill., for appellees.

Before ALSCHULER, EVANS, and ANDERSON, Circuit Judges.

EVAN A. EVANS, Circuit Judge. This appeal is from an order of the District Court adjudging Denise Brais an involuntary bankrupt.

Appellant's defense was and is that "she is a person principally engaged in farming and tilling the soil," and therefore, under section 4b of the Bankruptcy Act (Comp. St. § 9588), not subject to an adjudication as an involuntary bankrupt. This section reads:

"Any natural person, *except a wage-earner or a person engaged chiefly in farming or the tillage of the soil,* * * * may be adjudged an involuntary bankrupt," etc.

Was appellant a "person engaged chiefly in farming or the tillage of the soil"? The referee to whom the matter was referred, and who heard the oral testimony of the witnesses, answered this inquiry in the affirmative. The court answered it in the negative. What are the facts?

[1] Some 47 years before these proceedings were begun, appellant and her husband moved to the 240-acre farm which constitutes the bulk of the estate of the alleged bankrupt. Here appellant has since resided; here she and her husband made "their living," "working the farm." Here, too, she raised a large family. Here her husband died, and all of the children, save two, the youngest son and a daughter, have "left home." Appellant borrowed large sums of money to advance to a son who engaged unsuccessfully in the coal-mining business, and thereby became insolvent.

About two years before the petition in bankruptcy was filed against her, appellant entered into an agreement with the son, who had always lived with her on the farm, and who had recently married, respecting the profits and the conduct of the farm. The son called it a partnership agreement. While hardly a partnership, it appears that the profits were to be divided equally between the two; the son was to purchase the personal property, and the appellant was to contribute the use of her farm. The son was not able to buy all of the personal property when the agreement was made, and appellant contributed what was not purchased. Both son and mother remained on the farm, the son doing the heavy work outside, the mother assisting the daughter and the daughter-in-law in the

house, and taking care of the 400 chickens on the place.

Appellees rely upon In re Driver (D. C.) 252 F. 956, In re Leland (D. C.) 185 F. 830, and In re Tyler (D. C.) 284 F. 152, to sustain their position. It is worthy of note that in all three cases the alleged bankrupts had removed from the farm and for several years occupied permanent residences in nearby villages. Surely this is a distinguishing fact of persuasive significance. In the instant case, Mrs. Brais, for over 47 years, had no other residence, and no other occupation.

No doubt, in her younger days, she had performed more numerous duties and had participated more actively in the hard work of the farm. The fact that the field of her activities had lessened with her advancing years, however, has little or no bearing upon the question of the character of her occupation. Considering her years, it could hardly be expected that she would work in the fields, or at other hard manual labor. On this farm she did what a woman of her years would ordinarily be expected to do in order to qualify as "a person engaged in farming or the tillage of the soil." For the purpose of determining whether a person is subject to an involuntary adjudication, one must have some vocation. Appellant can be most fittingly described as one engaged chiefly in farming or in the tilling of the soil.

[2] The burden was upon appellee to take Mrs. Brais out of the exception found in section 4b quoted above (In re Beiseker [D. C.] 277 F. 1011), and that burden has not been overcome.

The order is reversed, with directions to dismiss the petition.