## In re COX.
### No. 4968.

District Court, S. D. Illinois, N. D.
Jan. 3, 1935.

Ira J. Covey and E. L. Covey, both of Peoria, Ill., and Lyle Thomas, of Lewistown, Ill., for petitioner.

Robt. B. Chiperfield, Burnett M. Chiperfield, and Claude E. Chiperfield, all of Canton, Ill., for alleged bankrupt.

MAJOR, District Judge.

An involuntary petition in bankruptcy was filed against Alta Cox, charging the commission of an act of bankruptcy as of March 17, 1933, and alleging at said time that she was neither a wage-earner nor a person engaged chiefly in farming or the tillage of the soil.

An answer was filed by the alleged bankrupt, alleging that she was a person engaged chiefly in farming or the tillage of the soil and, therefore, exempt from the operation of the Bankruptcy Act (section 4b, 11 USCA § 22 (b). There is no claim that she was engaged in the actual tillage of the soil, and the sole question presented is as to whether or not she was a person chiefly engaged in farming as that language is used in the bankruptcy act.

There is no serious dispute as to the facts, in fact, they were mostly stipulated. Eben Cox, husband of the alleged bankrupt, for many years was the owner of 320 acres of land located about 1½ miles from the village of Vermont, Ill., where for many years he and his wife resided and were actively engaged in farming. In 1920 he and his wife moved into the village of Vermont, where they made their home until the death of Eben Cox, which occurred December 5, 1930. After moving from the farm and up until the time of his death, he still continued to own the farm, which was occupied by Paul Cox, a son. The farm was operated under what is referred to in the testimony as a partnership between Eben Cox and his son, by which the former furnished the land and half of the stock, while the latter furnished half of the stock, the machinery, and the labor. It seems the father and son had equal voice in the management and operation of the farm. Profits and losses were shared equally.

Shortly prior to the death of the said Eben Cox, the farm in question was conveyed to his wife, Alta Cox, and title to his one-half interest in the live stock and crops was conveyed to her by bill of sale. Prior to his death he expressed the wish to his wife in the presence of their son, Paul, that after his death she continue the partnership with Paul in the same manner as the farm had been operated between him and Paul, and this she did, in so far as her health and physical condition would permit.

I include this statement with reference to Eben Cox as it has, in my opinion, a material bearing upon the situation as it concerns respondent.

At the time of the death of her husband in 1930, up to the time of the filing of the involuntary petition against her, she continued as the owner of the farm and one-half of the stock, while Paul furnished half of the stock, the machinery, and did the actual farm labor. Alta Cox continued to maintain a home in the village of Vermont, although she actually resided a good portion of the time with a daughter at Canton, Ill., some 35 miles distant from the farm. She was at the farm, however, on an average of once a month or oftener, and on those occasions and others, when her son met her in Vermont and Canton, they discussed and planned as to the manner in which the farm should be operated, the rotation of crops, and when and where the crops and live stock produced

upon said farm should be sold or disposed of. The operating expenses of the farm were paid from the proceeds and the net profits divided equally between Alta Cox and Paul Cox. The proceeds from the farm were deposited in a bank in the name of Paul Cox and no joint bank account was kept. Also, from the proceeds was paid a debt made by the former partnership of Eben Cox and Paul Cox which was owing at the time of the death of the former.

Alta Cox is a woman sixty years of age, frail in health, and unable to engage in the actual tillage of the soil. She had no other source of income, occupation, or business, and for the three years prior to the filing of the petition herein, had received from the proceeds of the farm something more than $500 each year as her part.

Lengthy briefs and arguments have been submitted by counsel for the respective parties in which many authorities have been cited, most of which, at the best, can only be helpful in a general way, for the reason that each case must be decided upon the merits as revealed by the facts in that particular case.

This court naturally and properly should follow the rule as announced by the Circuit Court of Appeals for this circuit. There are three cases where the precise question has been decided, upon facts similar to those now before the court. In the first of these, In re Brais (C. C. A.) 15 F.(2d) pages 693, 694, is a case quite similar, except in that case the alleged bankrupt, after the death of her husband, continued to reside on the farm. A partnership agreement was entered into between the mother and the son in the same general way as the one here. The mother, owing to her advanced age, was unable to participate actively in the farm work, but merely assisted in the housework and the caring for the chickens. The Circuit Court of Appeals reversed the findings of the District Court, and in the opinion said: "For the purpose of determining whether a person is subject to an involuntary adjudication, one must have some vocation. Appellant can be most fittingly described as one engaged chiefly in farming or in the tilling of the soil. The burden was upon appellee to take Mrs. Brais out of the exception found in section 4b [11 USCA § 22 (b)] quoted above, * * * and that burden has not been overcome."

In the next of these cases, In re Glick (C. C. A.) 26 F.(2d) pages 398, 400, the facts likewise are similar to the present case. The main distinction seems to be, in that case, the alleged bankrupt had agreed to help with the farm work and actually performed a part of the same; while in the case before the court, Alta Cox did no part of this work. The court, in reversing the decision of the District Court, said: "Whether a debtor is within the exempted class is a question of fact, to be determined in each case on its own facts and all of the facts. Upon consideration of all the facts we conclude that Glick is within the exempted class."

The last of these cases is that of In re Glass (C. C. A.) 53 F.(2d) page 844, where the court affirmed the decision of the District Court in holding that the alleged bankrupt was not chiefly engaged in farming. It is insisted by counsel for petitioner that the facts in this case are so similar to the one before the court that it is controlling here, or, at any rate, must be quite persuasive. True it is, the facts are quite similar, but it may be noted the alleged bankrupt never had lived on the farms in question and had no interest in the stock or equipment used in their operation. In the present case, the alleged bankrupt, not only owned a one-half interest in the live stock, but her entire life, from the time of her marriage, has revolved about and been connected with the operation of this farm.

It seems to the court, the past activities of Alta Cox may properly be taken into consideration and that they throw considerable light upon the question now before the court. For many years she resided on this farm with her husband, who actively farmed and tilled the soil. There is no question in my mind but what her husband continued in the exempt class after they left the farm and up to the time of his death. Even if it be conceded that during these years Alta Cox was merely the housewife of a farmer and not in the exempt class, yet when the farm was conveyed to her, together with her husband's interest in the personal property, located on the farm, with an agreement with her son, Paul, that she was to continue the same relation to the farm and its operation as had been maintained by her husband, it seems to me she stepped into his shoes.

There was no relation of landlord and tenant between the son and respondent, she had no other occupation or income, and all her business activities, meager as they were, due to old age and declining health, were connected with the farm. On these facts, taken

in connection with her past life and work, I am brought to the conclusion she was also of the exempt class.

The burden was upon petitioners to prove that she was not in the exempt class, and this they have failed to do. It is therefore the finding of the court that Alta Cox, on the 17th day of March, 1933, and at the time of the filing of the petition herein, was a person chiefly engaged in farming and not amenable to involuntary bankruptcy.